DONG vs. ATTORNEY GENERAL Good afternoon, Your Honors. May I reserve five minutes for rebuttal? That's granted. Thank you. May it please the Court, my name is Joshua Bardavid, attorney for Petitioner Ms. Dong. Ms. Dong demonstrated eligibility for asylum and related relief in that she suffered past persecution and has a well-founded fear of future persecution. I guess, obviously, the thing that bothered the I.J. here was why the husband didn't at least give an affidavit. And what was her – what is her reasoning for that? I don't know why he didn't provide an affidavit. A reason wasn't provided in the record, say, but it's respectfully asserted that the judge's requirement that the husband provide an affidavit is a misapplication of this Court's three-part standard as enunciated in Abdullah and later in Sandy. You may be right, but the point being, I can understand why he didn't want to appear in person because I guess he has an order against him, a removal order against him, is that right? That's correct, Your Honor. Or is it proceedings? Order of exclusion. It's order of exclusion. But he did go back in 96, is that correct? Yes, Your Honor. And he wasn't there when she claims that she had the forced abortion in 97. So I understand your point, but there are still things that, as both the I.J. and the BIA say, he could have fleshed out and did not do so. I would agree that there are things that he could have corroborated, but it's not fatal to her claim. And the error below is the fact that she did corroborate the very things that the immigration judge and the Board of Immigration Appeals were expecting him to corroborate. She did provide corroboration through alternative means. Who is that? She provided her U.S. medical records confirming that she informed her gynecologist. That's hearsay from 2001. That's the problem that the I.J. had with that. Well, the I.J. did not really add. That's really just her own statement to her doctor at the hospital. That's correct. And as would the husband have provided information only what he gained from her because he was in the United States at the time of the forced abortion. And the problem is that the immigration judge did not conclude that the U.S.-based medical records were merely hearsay and insufficient. The immigration judge did not conclude that the mother-in-law's firsthand account of the forced sterilization, that Ms. Dong's cousin, Ms. Chen, who also provided a statement regarding the forced abortion, was not sufficient. The immigration judge provided no analysis of the corroborating documents. He merely focused his entire decision, as did the board, on the failure to provide the husband. And this court's second requirement in this court's three-part test and a die is explain whether or not the applicant has provided corroboration. And the immigration judge did not give any discussion of the corroborating evidence. So it's not that we're asking this court to weigh the U.S.-based medical records, the letter from the mother-in-law, the letter from Cousin Chen, against the failure to present the husband's testimony. The error below was the fact that the immigration judge, nor the board, failed to provide an analysis of this other corroborating evidence. So you want us to remand in order for that to be done? Precisely, Your Honor. And that's why the error below we feel is readily apparent, the failure to analyze this evidence. And the relief that we're seeking is relatively modest, that in light of the failure to present the husband's corroborating affidavit or testimony, whether or not the other corroborating information was sufficient to meet her burden of proof. And that has not been analyzed. There's been no explanation and no discussion below by either the IJ or the board. And we would respectfully submit that, in fact, this evidence is inherently more reliable than what would have been the husband's also hearsay testimony, that he was not present in China at the time of the relevant events. The immigration judge said he wanted the husband to provide testimony regarding two things, the first being the forced abortion, which he was not present for, and the second being his travel back to China in the summer of 1996 when she became pregnant, when Ms. Dong became pregnant. However, Ms. Dong did present, in fact, U.S. government-issued documents confirming that he did travel to China in 1996. These were INS documents showing advanced parole. They gave a copy of his passport with the stamps reflecting the dates of travel, and they gave the original of his I-94 card. The one thing that could have helped her significantly was the certificate of induced abortion from Guangtao Health Hospital. But it was released that the government asserted that it was fraudulent, and there was some evidence of that effect. How do you counter that? Well, Your Honor, there was, in fact, a contrary affidavit from an expert from the Political Asylum Research Division based in the United States with a CV directly challenging both the conclusions and the methodology used in reaching those conclusions. Susanna Liu, the Chinese national who works for the U.S. consulate in Guangzhou, who issued this report concluding that this certificate was fraudulent, the sole basis of that conclusion was upon the assertion that the Chinese government told her that that doctor never worked at the hospital. And aside from the fact that this is essentially asking the persecutor whether it persecutes and then taking their statements wholeheartedly, the immigration judge did accept the fact that there was contrary evidence, that there was, in fact, questions as to the methodology used to reach this conclusion, and did not base his decision on the fact that the – Susanna Liu, working for the Chinese – the U.S. consulate in Guangzhou, concluded that this document was, in fact, fraudulent. So given the fact that there was contrary evidence and the fact that the immigration judge did not accept the conclusion that it was fraudulent – now, he didn't necessarily accept the document for the truth, the induced abortion certificate, but he did not use it to discredit Ms. Dong either. And so the conclusion that this document was fraudulent in no way undermines Ms. Dong's claim for asylum, particularly where she did present other corroborating evidence. And that other corroborating evidence remains unanalyzed by the agency below. In looking at the abdullized standard, if that's what you're going on, you know, the third prong is analyze whether the applicant has adequately explained any failure to provide corroboration. I mean, there is no explanation at all here, is there? For her failure to provide her husband's corroboration, no. But in order to get to that third part, you need to have that second question answered in the abdullized standard, which is whether or not the applicant has, in fact, provided corroboration. Now, the immigration judge and the board focus exclusively on her failure to provide her husband's testimony, but that does not necessarily mean that she did not provide corroboration. And we would assert that she provided extensive corroboration and inherently more reliable corroboration of this fact. And that question remains unanswered. So in order to get to the third part, you first need to answer the second part, and neither the IJ nor the board provided that answer. The first red flag that the IJ has is that in connection with the husband's proceedings, that he claimed that there was an induced abortion against her will in 1992. Is that correct? That is correct, yes. And she's saying that didn't happen. That's not correct. Why did they not at least coordinate as opposed to corroborate? Well, I mean, I can't answer that question. I can only assert she does state. I guess all she said at the hearing was that's just not true? She said that's not true, but she also pointed to the fact that she had not been in touch with her husband. And, in fact, if you look at her statements given at the airport upon arrival in the United States, they asked her why she was coming to the United States. She says, well, I was subjected to a forced abortion,  so she wasn't necessarily in touch with her husband at the time of the prior testimony or his prior application, and she further asserts during her testimony that she did not know any of the contents of her husband's application. The first time she was learning of it, in fact, was when the government raised it during her. When did her husband apply? Her husband applied for asylum in 1991, and his hearing was in 1992, which was when he was also ordered excluded at the time. How do you get around this substantial evidence standard or review? Again, the fact remains is that there has been no balancing of the evidence provided. That, again, it was decided almost exclusively on the failure to provide the husband's corroborating testimony, and there's been no analysis of the other evidence, and it is well established that when an IJMBIA reaches a determination, they must do it on the record, not as a whole, and there is no indication whatsoever that that's been considered. Now, they don't obviously have to explain every piece of evidence, but particularly where they're finding a lack of corroboration and there's an explicit requirement contained in Abdullah, that they must explain whether or not a fact has been corroborated. Neither the IJ nor the BIA has, in fact, explained whether or not this fact or forced abortion was corroborated through other means. I see my time's up, and I'll have five minutes for rebuttal. Thank you, Your Honor. May it please the Court. Excuse me. I'm Jason Weiskopf for Respondent Eric Holder. Here, substantial record evidence does support the agency's determination in this case. The point here being is that you've got an IJ that says, I find you credible, but I believe that you need to corroborate what you've said by, among other things, or certainly by testimony of your, quote, star witness, your husband. Abdullah says that has to be central to your case. But if her husband wasn't there in 1997, wasn't in China, wasn't in the country, when the alleged abortion was performed, how could he be central to her case that she had an abortion in 1997, a forced abortion in 1997? Right, Your Honor. And I guess the question becomes then at that point whether both of their claims are based on an abortion that happened. It doesn't make it irrelevant just because they completely disagree on when that happened. But it has to be central. I mean, she had at least six items that I, a statement from her mother-in-law, who had immediate knowledge of what was going on in 1997, a gynecologist checkup certificate from her hometown, a statement from her relative confirming where she lived when she went into hiding in 1997, a certificate of induced abortion from the hospital, Guantanamo Health Hospital, in that province that the government claims was fraudulent but she claims was not. We have copies of her husband's travel documents that shows that he was not in China in 1997. And we have the, whatever it's worth, the U.S. medical records that she told her doctor in 2001 that she had a forced abortion in 1997. That's, compared to what's usually done or given as evidence in these cases, this is quite, that's quite a lot. Well, you have, what the inquiry breaks down though is on step one, the first step of the inquiry is to identify the testimony for which corroboration would be helpful. And so that testimony. And that is that her abortion occurred in 1997. And she has a lot of corroboration. Now, there is something hanging out there that is like a stone left unturned that is a date in her husband's application. But that's not something that needs to be corroborated. That's kind of a stray remark. And it seems to me that explaining that, you know, if you have a seventh that doesn't really, that is inconsistent, do you have to, does corroboration require that every stone be turned over? And that's why Adelaide's second step is critical. Has she corroborated it? Well, I wouldn't call this a stone, Your Honor. This is a boulder here. This is the husband putting it in. His application says something. Why is that so relevant? He got the date wrong. Does that mean it didn't happen in 97? Well, he didn't just get the date wrong. He was applying in 92 and making statements that this abortion has already happened. Wait a minute. Something happened in 92. Right. Even in cross-examination, it's clear that something happened. He just got wrong what it was. He was confused. Isn't it possible that Judge Rendell said he got it confused as to exactly what took place in 92? Well, I think that his asylum application is very clear. The 1992 asylum application, if you look at it, goes into great detail about what happened and about how he— But doesn't this go to credibility? In other words, if you're an I.J. and a person says that she had a forced abortion in 97, and somebody goes, Aha, I've got something here, your husband's testimony. By the way, he hasn't appeared, and he said that you had a forced abortion in 92, and yet the I.J. comes down and says, I find her credible. That's game, set, and matches to that particular issue, isn't it? Well, it would be if the corroboration standard weren't set up like it were. So, for example, in this case, even where a person is otherwise credible, it's still acceptable to require corroborating evidence in certain instances. But how is it that she didn't provide enough under Step 2? Under Step 2? Did the I.J. analyze, gee, I have this, I have this, I have this, I have six things. Shouldn't he say, I have six things, and these either are or are not okay as to 97, so I need the seventh thing. I need him to say, oh, sorry, I got it wrong. It was a different thing that happened. It was the I.U.D. that happened then. It wasn't the forced abortion. But that second step, the I.J. did not say, hmm, you know, I think it's okay, but I need corroboration here. Oh, wait, I have corroboration. Don't you have to do that? Well, again, Your Honor, I would submit that all of those documents you mentioned, they all, yes, state that the abortion happened in 1997. Right, so they corroborate her story. But not a single one of them explained the discrepancy between her claim that it occurred in 1997 and her husband's claim that it occurred in 1992. What standard are you on? Are you under Abdullahi? Are you under, what case says? It's the Sandy case, Your Honor, 562 F3rd and 253. And the first step in the iniquiry is identify the testimony for which it is reasonable to expect the applicant to corroborate. And presumably that is that she had a forced abortion in 1997, correct? Correct. Okay. Correct. Or, yes, that's the statement therein. But then, again, the conflict therein between that statement and the 1992 document itself. But I think as Judge Ambrose, if that comes down to then, that's really a credibility determination. And did the I.J. say, oh, well, because that hasn't been explained, I think the inconsistency created thereby makes her story that it happened in 1997 incredible. Well, I mean, it's... We're not denying that it happened at some point, too. I mean, this all happened to her. Is anyone saying it didn't happen to her? And if it happened to her and we think it could happen again, isn't that enough? Well, Your Honor, the point is that, again, it's the agency making the determination. So the question is whether any rational adjudicator can make this determination. But the point is, as a matter of law, under Abdoulaye is this a matter that should be subject to corroboration. Remember that Abdoulaye says that corroboration can be required on facts which are central to the claim and easily subject to verification. Now, what's central to her claim is that when he wasn't in the country, she had a forced abortion, and she has a number of items out there that attempt to verify that. And, again, she was found credible. Why then focus on an absent person's, quote, corroboration, close quote? It doesn't seem to fit under Abdoulaye. Again, Your Honor, I would disagree with that. You have, when you have testimony that's contradictory, you have to focus on that first step necessarily, where her testimony is conflicting with the 1992. But what's contradictory? What are you saying is contradictory? Her statement that she did not have an abortion in 1992, as opposed to the husband's. Yeah, but as my colleagues have said, the IJ found her testimony to be credible. Therefore, I assume from that, that they didn't find that there were contradictions. Correct, Your Honor. I'm not suggesting that there's a 100% logical connection between the two. There's a subtle distinction between the burden of proof and the credibility finding. Just because someone's found not credible, that doesn't mean they meet their burden of proof in that instance. I mean, it just seems to me in this case, the IJ thought that they should have heard from the husband either in person or by affidavit. And he even told them sometime before that, that we expect to hear some testimony. And for whatever reason, the husband never appeared, either in person or by affidavit. Correct. It sounds to me like there was some disappointment as a result of that, that the complete story couldn't be told. But I'm not sure that constitutes the absence of cooperation. Well, Your Honor, again, I would disagree. I would say that it was completely rational for the immigration judge and completely fair for the immigration judge to ask for that explanation. Where, again, if you look at the husband's asylum application, completely contradicts what she said in this case. But I don't think that's Abdoulaye. I think we're in kind of a hybrid. You know, Abdoulaye talks about when it's reasonable to expect corroborating evidence, an otherwise credible applicant who neither produces such corroboration or adequately explains his or her failure to do so may be deemed to have failed to meet his or her burden of proof. That's a situation where she tells the story and she has nothing to back it up. And it's hard to believe that you couldn't get the doctor's certificate or you couldn't go to the lengths of getting the report from the doctor where you walked in and said, I had a forced abortion in 1997 with no motive to lie, because you're talking to your doctor, didn't produce that. And the light bulb goes on in the I.J. and the I.J. says, you know, story sounds good, your manner credible, but, you know, you don't have what you normally should have in a case like this. You can easily access something and you haven't done it. That's not this case. This case is, this happened, and there's ten things that says it happened, but there's this, I call it the stone unturned, of the husband having filled in a blank saying something happened in 92 and it was an I.U.D. insertion. I mean, if he says, oh, no, it did happen in 92, I mean, she has corroborating evidence. Why doesn't that end there? And did the I.J. really analyze what she had provided? I would say that the I.J. did analyze the evidence she provided. What did he say about it? And, again, just the point, though, is that, and I know you had said, I don't think this appears on Abdullahi either, but, again, in the Sandy case, the first step. What did he say about the other evidence? I mean, that was her question. What did he say about the evidence, the I.J.? He said that she had not submitted other sufficient corroborating evidence. I don't think he went into depth into that. But, again, he was focusing on the specific question right here, the specific, again, the mother's. Let me say, the whole point in Abdullahi, the whole point of corroborating evidence is I find her otherwise credible, but does the lack of corroborating evidence mean she has not met her burden of proof and, therefore, I can't grant it? Here, he didn't really say that. Well, Your Honor, I would disagree. He said that she failed to present adequately corroborating evidence, and the I.J. is allowed to consider that in meeting burden of proof, whether or not she met her burden of proof, apart from the credibility determination. They are two separate determinations. So, again, it doesn't seem irrational for him to ask for corroborating evidence, to ask for evidence that would explain this discrepancy in her testimony. No, it's not irrational for him to ask for it. But for him to say, the I.J. Honeyman, to say that the husband is the, quote, star witness, close quote, and, therefore, he must be here seems to be a bit of a stretch when there was nothing he could really witness about 1997 when he wasn't on the scene. Well, it would have been completely fine for her to explain why he couldn't do that. I think that's logic. Isn't it common sense? He's subject to an exclusion order. Well, again, then they could have provided an affidavit from him, and that was never provided. That would have been completely reasonable. They were living together at the time of the hearing. And, again, she has never explained, even to today, why that wasn't available, why she couldn't bring that forward to the court. That's not the point. The point is, does she have to? I mean, as Judge Fischer noted, it was made pretty clear to her and her counsel that the I.J. was going to be certainly disappointed if the husband didn't show up to testify or in some way give evidence. But he didn't. And we can surmise what the reason is. But despite that, once she was found credible, that is, that she tells the truth with respect to what happened to her, why is there the need of corroboration from somebody who wasn't even in China in 1997? Well, I will agree, Your Honor. At some point you are operating on the legal fiction that someone who's found credible is deemed to have told the truth in that instance. But the case law does set out the separate distinction between the two doctrines, and the question is whether or not the agency erred in making its determination under the credibility standard, which at this point it doesn't appear that the immigration judge did anything improper at that point. I'll just sum up really quickly then. Again, this is a substantial evidence standard. Well, it's substantial evidence, but if there was a failure to properly perform the Abdullahi test, i.e., to assess what has been provided as corroboration and determine whether it's sufficient in terms of the things she did provide, then that's separate and apart from substantial evidence, isn't it? Under 8 U.S.C. 1252b.4, you also have the corroboration standard because this is a factual determination. If the immigration judge had made an error of law and at some point not applied one of them. But again, I'll cite to the Sandy case one more time, 562F. I know Sandy. Okay, great. So that's it. Thank you. Thank you. I think the problem is we're getting a little bit confused as to the difference between where it's reasonable to expect corroboration of a fact and where it's reasonable to demand and require as fatal to a claim specific evidence and failure to present that specific evidence constitutes failure to meet a burden of proof. The immigration judge essentially made the conclusion that failure to present the husband was fatal to the claim without any analysis of why the other evidence presented was not sufficient. The Board of Immigration Appeals on page 4 of the record specifically shows that it's making the conclusion that the failure to present the husband's testimony was fatal to the claim without any analysis whatsoever of the other evidence. The board specifically says, rather because the respondent's testimony is weakened by her husband's statements, there is a greater need for the respondent to sufficiently corroborate her claims. But then they give no explanation of whether or not she did. Therefore, there was an error of law and a misapplication of the Abdullahi standard and the matter should be remanded for proper analysis of the evidence presented in this record for determination of whether or not Ms. Dong met her burden of proof through corroboration. Although just as we can adopt a test under Abdullahi, we haven't spoken as to whether you could do what the IJ did here. It's a variation on Abdullahi. And what it would say is that where there is some corroboration, but nonetheless, there is an inconsistency. You haven't met your burden unless she can further corroborate to make that inconsistency go away. I mean, isn't it possible that confronted with this different fact pattern, different from Abdullahi, that we would say, well, in this instance, you know, it's reasonable for the IJ to need, where it clearly should be available, to need and have a question if this inconsistency isn't explained. Isn't it possible and plausible to have that as a test that we could say, you know, that's reasonable and it works? Certainly, Your Honor, and that is something that this Court could do and it's entirely plausible. But in this specific instance, that's not what happened. It's not that the immigration judge said, well, you have seven pieces of evidence present, but this stone left unturned, and because that stone was left unturned, I'm going to find that the respondent is, or Ms. Dong has not met her burden of proof, because that stone is so essential and it outweighs the other seven pieces of evidence. That's not what happened. What happened was that the immigration judge only focused on the unturned stone and gave no discussion, no analysis, and basically entirely ignored all the other evidence and left this Court essentially to guess whether or not the judge in any way considered the other evidence. I believe he specifically discusses his application of this unturned stone to the Abdullahi standard. Do you like my unturned stone idea? I do. I do like that, Your Honor. And it's on page 151 to 153, and if you read the judge's application of the Abdullahi standard, he's not attempting to create a new standard. He's not saying, well, this isn't a modified Abdullahi or whatever he wants to say. He actually is, in his language, applying the Abdullahi standard, and I respectfully submit that he misapplies it because he simply focuses on that one piece of evidence without an explanation as to why, under the second step of Abdullahi, the other evidence presented was insufficient. So it's not that he created a legal standard and then attempted to apply the facts to that new legal standard. He was attempting to apply the facts to a current legal standard, Abdullahi, and respectfully assert that he misapplied those facts to the Abdullahi. So if we agree with you, what do you ask us to do with this case? A remand to the immigration judge for analysis of whether or not the corroborating evidence provided was sufficient for Ms. Dong to meet her burden of proof. That's not to say the immigration judge can't consider the failure to present some evidence, but the immigration judge needs to explain why that failure is fatal where there is other corroborating evidence. Isn't it reasonable for us to read the record that what the IJ was saying was that since the husband, who isn't here, in his application said the abortion happened in 1992, his absence here leaves us with an uncooperated story, and therefore we don't think that Dong has met her burden of proof. Isn't that really what the IJ was saying? To be honest, I would think that that's possible, what the IJ is saying, but in that case it seems that the IJ is expecting her to corroborate the claim that in 1992 she had a forced abortion, something which she is not making. It seems that the immigration judge was expecting her to provide corroboration or an explanation of this 1992 event where she's basing her claim on the 1997. That seems like a totally separate event. You have the 1992 event that may have been support for past persecution, and you get the 1997 event, but she was clearly relying on the 1997 event, notwithstanding what her husband may have said about 1992. Correct, Your Honor. But you don't agree with my analysis that the IJ really said what you're asking the IJ to go back and evaluate. To be honest, I mean, it's possible that that's what the IJ was attempting to say, but the fact that he did not give any explanation or show that he had any consideration of this other evidence really leaves it far too open of a question as to know whether the IJ intended that. And it's not for this court to guess what the IJ was intended. The IJ's decision stands and falls on the language contained in that decision, and there is no discussion whatsoever of the other highly relevant evidence presented confirming the 1997 abortion. And so if that's what the IJ intended to say, then we need to hear him explain it and why the other evidence is insufficient, and that would be subject to any review. I understand what you're saying, but is corroborating – might not an argument be that there's no corroborating evidence needed here at all? For the – it's possible, considering the fact that the immigration judge found her credible. It is certainly possible that the IJ could make that determination. But abdullah is when someone is otherwise credible. Yes, Your Honor. So you are credible, but it's the kind of situation where the elephant in the room is that there's so much availability of stuff that could support what you've credibly said that because you haven't come forward with it, you haven't met your burden. Right, and in that instance where that's the first part where it's reasonable to expect corroboration and then you need to shift to the second part. But I guess maybe my hang-up is on step one. Is it reasonable to expect corroboration with respect to someone who wasn't there at the time of the alleged incident? Your Honor, and our position, as we announce the interim brief, is that it's reasonable to expect corroboration of the forced abortion. It is unreasonable to expect that the husband provide hearsay testimony. Would constitute corroborating evidence. That's really the problem. Right, right. It's the, you know, what, so what? Is it, does it have, would it have weight as corroborating in any event? Right, right. And if I could just, one final point, I see my time is up, is that the immigration judge notes in his decision that the husband was the second person who she, Ms. Dong, told of the forced abortion, and he says it would be reasonable to expect the second person who learned of it. And in that, remarkably, he makes no mention of the fact that he did provide an affidavit from the first person who was told of the forced abortion, the mother-in-law. And the third person who was told of the forced abortion, Ms. Chen, or Mr. Chen, Ms. Dong's cousin. Unless the Court has any further questions, we'll rest on our briefs. Thank you, Your Honor.